UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KURT KALANI SPARKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-01193-RLY-MG |
| | ) | |
| STATE OF INDIANA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY GRANTING IFP STATUS AND SCREENING COMPLAINT**

On June 4, 2026, Plaintiff Kurt Sparks filed a motion to proceed *in forma pauperis*. (Dkt. 2). Sparks's motion is **GRANTED**. *See* 28 U.S.C. § 1915. While *in forma pauperis* status allows him to proceed without prepayment of the filing fee, Sparks remains liable for the full fees. *Rosas v. Roman Cath. Archdiocese of Chi.*, 748 F. App'x 64, 65 (7th Cir. 2019) (citing *Robbins v. Switzer*, 104 F.3d 895, 897–98 (7th Cir. 1997)). No payment is due at this time.

***Screening Standard***

Because Sparks is proceeding *in forma pauperis*, the court is required to screen his complaint and must dismiss if the court determines the action (1) "is frivolous or malicious," (2) "fails to state a claim on which relief may be granted," or (3) "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In determining whether the complaint states a claim, the court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). To

survive dismissal, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court "liberally construe[s]" Sparks's *pro se* complaint and does not hold it "to the stringent standards expected of pleadings drafted by lawyers." *McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000).

## I. Background

Plaintiff Kurt Sparks is a United States military veteran with three children. (Dkt. 1 at 2). Plaintiff is currently participating in the "federally funded Transitional in Place (TIP) housing program administered jointly by HVAF of Indiana, Inc. and the United States Department of Veterans Affairs."[1] (*Id.* at 4). Plaintiff was assigned to a residence located in Indianapolis Indiana. (*Id.* at 6). Before moving into the home, "Defendants represented that the residence . . . had been inspected and approved in accordance with TIP program standards, HUD habitability requirements, and VA oversight expectations." (*Id.*). Plaintiff was not informed of any issues with the home before moving in. (*Id.* at 7). But when Plaintiff moved into the home, he discovered "biohazards, structural deficiencies, and environmental risks, indicating that the pre-placement inspection process was materially deficient." (*Id.*).

Plaintiff discovered used needles, used condoms, drug paraphernalia, and burglary tools on the property. (*Id.* at 8). He also found broken glass, metal fragments, and other

---

[1] HVAF stands for Helping Veterans and Families.

debris. (*Id.*). In addition, the HVAC system was impaired, so it failed to adequately heat the home during the winter months. (*Id.*). The home lacked a dryer vent, which allowed moisture to accumulate and exhaust to enter the home. (*Id.*). Finally, Plaintiff noticed evidence of insects and rodents in the home. (*Id.*).

Plaintiff notified "Defendants of these hazards, providing photographs, videos, and written documentation, yet Defendants failed to take timely or adequate corrective action."[2] (*Id.*). Living in the home caused his children to develop respiratory issues such as coughing, wheezing, sinus congestion, and difficulty breathing. (*Id.* at 9). These issues negatively impacted the childrens' daily lives. (*Id.* at 10).

Plaintiff's point of contact with the HVAF program was Defendant Anne Knapke. (*Id.*). When Plaintiff informed her of the issues with his home, Knapke "provided inconsistent, contradictory, or incomplete information regarding program requirements, inspection procedures, and the status of repairs and services." (*Id.*). For example, Plaintiff was told that repairs or services had been scheduled or completed yet no work was ever initiated or done on the home. (*Id.* at 11). When Plaintiff continued to report issues and request information, Defendant Knapke reframed Plaintiff's reports as "accusations," "complaints," or "misunderstandings," instead of addressing the issues Plaintiff raised. (*Id.*). And supervisory HVAF staff, including Defendants Bobby Schuelke and Danny "Hoon" Park, failed to remedy the situation or give Plaintiff consistent information. (*Id.* at 12).

---

[2] Plaintiff frequently refers to "Defendants" and does not identify which of the nineteen Defendants engaged in the alleged conduct.

Plaintiff was also subject to differential treatment on account of his religion. Plaintiff and his children are Muslim, and Defendants were aware of their religious identity. (*Id.*). HVAF staff invited Plaintiff and his family to Christian-themed events, including Christmas and Easter, without offering religiously neutral or inclusive alternatives. (*Id.*). HVAF staff "made unusual efforts to persuade Plaintiff's family to attend a Christian Easter event," and after Plaintiff declined, he "observed a reduction in responsiveness and support, including delays in previously promised services." (*Id.* at 13). Plaintiff also noticed that Defendants "became less responsive, less supportive, and more dismissive of [his] documented concerns." (*Id.* at 13–14).

After this event, and Plaintiff's continued reporting of issues with his home, Defendant Park "instructed Plaintiff to limit communication and to route all concerns through a single point of contact." (*Id.* at 17). Before this, Plaintiff had escalated his concerns to various members at HVAF, the Department of Veterans Affairs liaison, and Congressman André Carson's office. (*Id.* at 23). Plaintiff alleges that Defendant Park's instruction to limit his communications "materially restricted [his] ability to obtain timely assistance and created barriers to reporting ongoing hazards." (*Id.* at 17). Plaintiff felt that this restriction was retaliatory, as it coincided with the decline in staff responsiveness and access to services. (*Id.*).

Because of Defendants actions, Plaintiff experienced personal, emotional, and economic harm. All other facts relevant to the disposition of this screening are addressed below.

## II. Discussion

### A. Defendants

#### 1. State of Indiana; Governor of Indiana; Lieutenant Governor Micah Beckwith

Under the Eleventh Amendment, states, state agencies, and state employees acting in their official capacities enjoy immunity from lawsuits in federal court unless the state consents to suit or Congress abrogates its immunity. *Tucker v. Williams*, 682 F.3d 654, 658 (7th Cir. 2012). "Section 1983 does not disturb the states' Eleventh Amendment immunity." *Patton v. Ind. Univ. Bd. of Trs.*, No.1:20-cv-00699, 2022 WL 3716522, at *6 (S.D. Ind. Aug. 29, 2022). Only persons are subject to suit under Section 1983, and "states and state agencies are not 'persons' under Section 1983." *Id.* (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

The State of Indiana may not be sued because it enjoys sovereign immunity. Therefore, all Plaintiff's claims against it are **DISMISSED**, and the State of Indiana shall be **REMOVED** from this action.

The same goes for the Governor of Indiana and the Lieutenant Governor Micah Beckwith. As noted above, state employees acting in their official capacities are immune from suit under the Eleventh Amendment. *See Tucker*, 682 F.3d at 658. Plaintiff sues the Governor of Indiana and the Lieutenant Governor in their official capacities, so they are immune from suit. Plaintiff also sues Lieutenant Governor Micah Beckwith in his individual capacity, but Plaintiff does not include any allegations against him in his individual capacity. Instead, the allegations relate only to Micah Beckwith's actions as

the Lieutenant Governor. Therefore, Plaintiff's claims against the Governor of Indiana and Lieutenant Governor Micah Beckwith are **DISMISSED**, and the parties shall be **REMOVED** from this action.

### 2. United States Department of Veterans Affairs; the Indianapolis VA Medical Center (HUD–VASH / TIP Program); Carrier Kinder

Because the United States Department of Veterans Affairs (the "DVA") is a federal agency, Plaintiff must comply with the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b)(1). The same goes for the Indianapolis VA Medical Center—because it is a federal hospital run by the DVA—and Carrie Kinder—because she is an employee of the DVA.[3] Plaintiff may not bring claims against these parties unless he first presented the claims to the DVA and the DVA denied the claims. 28 U.S.C. § 2675(a). Plaintiff has not alleged that he submitted his claims and received a final denial, nor did he attach a final denial letter to the complaint. And even if Plaintiff had complied with the prerequisites to filing suit, the United States is the only proper party for filing a claim under the Federal Tort Claims Act. *See id.* § 2674. Accordingly, Plaintiff's claims against the DVA, the Indianapolis VA Medical Center, and Carrie Kinder are **DISMISSED**. The United States Department of Veterans Affairs, the Indianapolis Medical Center, and Carrie Kinder shall be **REMOVED** from this action.

---

[3] Plaintiff refers to Kinder as a "VA liaison." (Dkt. 1 at 23).

### 3. Hoosier Homes Property Management; Redwood Capital Investments Midwest LLC; Omar [Last Name Unknown]; John Does 1–5

Plaintiff named Hoosier Homes Property Management, Redwood Capital Investments Midwest LLC, Omar [Last Name Unknown], and John Does 1–5 as Defendants in this action but there is not a single allegation in the complaint against any of them. Plaintiff therefore failed to state a claim against them. Hoosier Homes Property Management, Redwood Capital Investments Midwest LLC, Omar [Last Name Uknown], and John Does 1–5 are **REMOVED** from this action.

### 4. Remaining Defendants

The remaining Defendants are HVAF of Indiana, Inc. ("HVAF"), Anne Knapke (sued in her individual and official capacities), Bobby Schuelke (sued in his individual and official capacities), Danny "Hoon" Park (sued in his individual and official capacities), and Emmy Hildebrandt (sued in her official capacity).

## B. Violation of the Free Exercise Clause of the First Amendment (Count I)

Under the Free Exercise Clause, the government[4] "may not compel affirmation of religious beliefs, punish expression of religious doctrines it believes to be false, impose special disabilities on the basis of religious views or religious status, or lend its power to one or the other side in controversies over religious authority or dogma." *Students &*

[4] A violation of Plaintiff's constitutional rights can only be remedied if the violator was a state actor. Plaintiff alleges that the HVAF was acting under the color of state law as an arm of the DVA. The court therefore assumes for the purposes of this analysis that the HVAF and its employees were state actors.

*Parents for Priv. v. Sch. Dirs. of Twp. High Sch. Dist. 211*, 377 F. Supp. 3d 891, 906 (N.D. Ill. 2019) (quoting *Emp. Div., Dept. of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 877 (1990)). And the Seventh Circuit has held that the "Free Exercise Clause prohibits the government from 'plac[ing] a substantial burden on the observation of a central religious belief or practice' without first demonstrating that a 'compelling governmental interest' justifies the burden." *St. Johns United Church of Christ v. City of Chicago*, 502 F.3d 616, 631 (7th Cir. 2007) (quoting *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989)). "[S]ubstantial burden means a coercive effect." *Students & Parents*, 377 F. Supp. 3d at 907.

Plaintiff argues that Defendants, "acting under color of federal authority through the TIP program, interfered with Plaintiff's right to freely exercise his Islamic faith by promoting Christian-centric programming, pressuring attendance at Christian events, and reducing services after Plaintiff declined such events." (Dkt. 1 at 36). Because Plaintiff alleges that Defendants reduced services after he declined to attend Christian events, the court finds that he has alleged a sufficient burden on his central religious beliefs to survive the screening stage.

**C. First Amendment Retaliation (Count II)**

"A First Amendment retaliation claim has three elements: (1) the plaintiff engaged in protected speech; (2) the defendant took action that would dissuade the average person from speaking out; and (3) the defendant took the adverse action because of the plaintiff's protected speech." *Whalen v. MacKenzie*, 760 F. Supp. 3d 743, 748 (W.D. Wis. 2024). Plaintiff alleges that he engaged in protected activity by "documenting hazards,

requesting transparency, asserting his religious boundaries, filing grievances, and escalating concerns to supervisory staff and oversight bodies." (Dkt. 1 at 37). He also alleges that Defendants retaliated against him by "restricting communication, reducing services, delaying repairs, failing to pay bills on time, refusing to list Plaintiff as a vendor contact, and treating Plaintiff and his children with hostility." (*Id.*). Finally, Plaintiff alleges that this retaliatory conduct would deter a reasonable person from exercising their right to engage in free speech.

The court finds that, at the screening stage, these allegations are sufficient for the claim to proceed.

**D. Substantive and Procedural Due Process Violations (Count III)**

Plaintiff alleges that Defendants, again the HVAF and its employees, deprived him and his children of "their right to safe, habitable housing and failed to follow required procedures for inspections, documentation, remediation, and communication." (*Id.*). Additionally, Plaintiff alleges that Defendants' actions were arbitrary and inconsistent, which deprived him of fair process. The court will begin by addressing substantive due process.

To state a substantive due process claim, the plaintiff "must allege that the government violated a fundamental right or liberty. And that violation must have been arbitrary and irrational." *Campos v. Cook Cnty.*, 932 F.3d 972, 975 (7th Cir. 2019) (citation omitted). "[T]he list of fundamental liberty interests include[s] 'things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to bodily integrity.'" *Proctor v. McNeil*, 14 F. Supp. 3d 1108,

1116 (N.D. Ill. 2014) (quoting *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012)). "This is because '[f]undamental rights are rights deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" *Id.* (quoting *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010) (internal quotation marks omitted)).

Plaintiff alleges a fundamental right to safe, habitable housing. The court is unaware of any cases holding that safe, habitable housing is a fundamental right. Accordingly, Plaintiff has failed to state a claim for a substantive due process violation.

Turning to Plaintiff's procedural due process claim, "[p]rocedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "Procedural due process claims require a two-step analysis. The first step requires [the court] to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Barrows v. Wiley*, 478 F.3d 776, 780 (7th Cir. 2007) (quoting *Luellen v. City of E. Chicago*, 350 F.3d 604, 613 (7th Cir. 2003)). Plaintiff alleges that Defendants deprived him and his children of "their right to safe, habitable housing and failed to follow required procedures for inspections, documentation, remediation, and communication." (Dkt. 1 at 37). And he alleges that these actions were done arbitrarily, which deprived him of process.

Plaintiff's "right to safe, habitable housing" is not a protectable property interest. A person has a protectable property interest in a home they own or rent, but a person does

not have a protectable interest in the ability to live in a safe home absent a statute, regulation, or contract stating as much. *See Ulichny v. Merton Cmty. Sch. Dist.*, 249 F.3d 686, 700 (7th Cir. 2001) (stating that property interests are generally created by "state statutes, state or municipal regulations or ordinances, and contracts with public entities"). Accordingly, the court finds that Plaintiff has failed to state a procedural due process claim.

Plaintiff's claim alleging substantive and procedural due process violations is **DISMISSED**.

### E. Violation of the Equal Protection Clause of the Fourteenth Amendment (Count IV)

The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). "To make out a prima facie case for discrimination on account of race or religion, [Plaintiff] must show that he is a member of a protected class, that he was treated differently from others similarly situated and that he was so treated because of his protected status." *Ali v. Vill. of Tinley Park*, 79 F. Supp. 3d 772, 777 (N.D. Ill. 2015).

Plaintiff alleges that he and his children were treated differently from other similarly situated program participants because of his Islamic faith and cultural identity. Specifically, he alleges that "Defendants' Christian-centric programming, pressure to

attend Christian events, and reduction in services after Plaintiff declined such events constitute discriminatory treatment without a legitimate governmental purpose." (Dkt. 1 at 38). Plaintiff is a member of a protected class, and he alleges that HVAF reduced its services after he declined to participate in Christian-centric programming. Plaintiff does not identify a comparator, but he does allege that other non-Muslim individuals in the program were treated differently. At the screening stage, these allegations are sufficient for the claim to proceed.

### F. Violation of the Civil Rights Act for Discrimination in Contracting (Count V)

Plaintiff alleges that Defendants interfered with his ability to make and enforce contracts by discriminating against him based on his religion. 42 U.S.C. § 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." The Supreme Court has held that § 1981 does not protect against religious discrimination in contracting. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Because Plaintiff claims only that his right to make and enforce contracts was infringed on account of his religion, he has not stated a claim under § 1981.

### G. Negligence and Gross Negligence (Counts VI and VII)

To state a claim for negligence, the plaintiff must show that the defendant owed him a duty, the defendant breached that duty, and the plaintiff was harmed by the defendant's breach. *Podemski v. Praxair, Inc.*, 87 N.E.3d 540, 546–47 (Ind. Ct. App. 2017). To state a claim for gross negligence, the plaintiff must show that the defendant's

breach was a "conscious, voluntary act or omission in reckless disregard of the consequences to [Plaintiff]." *N. Ind. Pub. Serv. Co. v. Sharp*, 790 N.E.2d 462, 466 (Ind. 2003).

Plaintiff alleges that Defendants owed him and his children a duty to "provide safe housing, conduct proper inspections, disclose hazards, and ensure timely remediation." (Dkt. 1 at 38). He alleges that Defendants breached these duties by performing an inadequate inspection, failing to disclose dangers on the property, delaying repairs, and failing to coordinate with vendors. And he finally alleges that these breaches caused him "physical, emotional, and economic harm." (*Id.*). The court finds that Plaintiff included sufficient facts to support these allegations such that his negligence claim may proceed.

The court also finds that Plaintiff's gross negligence claim may proceed. Plaintiff alleges that Defendants "knowingly allowed unsafe conditions to persist, ignored repeated warnings, and failed to take corrective action despite clear evidence of harm." (*Id.* at 39). Plaintiff alleges that he informed Defendants of all the issues with his home and their response was delayed or nonexistent. These allegations are sufficient at the screening stage to allege a knowing, voluntary omission that recklessly disregarded the harm to Plaintiff and his family.

**H. Intentional Infliction of Emotional Distress (Count VIII)**

To state a claim for intentional infliction of emotional distress ("IIED"), a plaintiff must plead "that the defendant: (1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) cause[d] (4) severe emotional distress to another." *State v. Alvarez ex rel. Alvarez*, 150 N.E.3d 206, 218 (Ind. Ct. App. 2020) (quoting

*Westminster Presbyterian Church of Muncie v. Cheng*, 992 N.E.2d 859, 870 (Ind. Ct. App. 2013)). Conduct is extreme and outrageous if it "go[es] beyond all possible bounds of decency . . . and [is] utterly intolerable in a civilized community." *Id.* (quoting *Conwell v. Beatty*, 667 N.E.2d 768, 777 (Ind. Ct. App. 1996)).

Plaintiff alleges that Defendants engaged in extreme and outrageous conduct, "including retaliatory communication restrictions, hostile treatment, insinuations of poor parenting, and dismissive responses to Plaintiff's humiliation during the law enforcement incident." (Dkt. 1 at 39). Plaintiff has failed to state a claim for IIED. These factual allegations do not rise to the level of extreme and outrageous conduct. As its name implies, IIED claims are reserved for the most extreme conduct aimed at causing emotional harm. Plaintiff's allegations do not rise to that level, so the IIED claim is **DISMISSED**.

### I. Supervisory Liability and Discriminatory Climate (Count IX)

Finally, Plaintiff alleges that "Senior state officials . . . created a discriminatory climate through public statements hostile toward Muslims, contributing to a foreseeable environment in which downstream actors engaged in discriminatory conduct." (*Id.* at 40). He then alleges that "Defendants operated within this climate and acted in ways consistent with the discriminatory posture established by state leadership," which violated his constitutional rights. (*Id.*). To the extent Plaintiff raises claims against the Governor and Lieutenant Governor, those claims are **DISMISSED** since the court dismissed them from this action.

As for the claim against the remaining Defendants, there is no standalone claim for "discriminatory climate." Instead, Plaintiff can allege that a discriminatory climate contributed to the violation of his equal protection rights. Thus, the court construes this final claim as part of his equal protection claim rather than as a standalone claim.

## III. Conclusion

Plaintiff's motion to proceed *in forma pauperis* is **GRANTED**. (Dkt. 2). The following claims are **DISMISSED**: substantive and procedural due process (Count III), discrimination in contracting claim (Count V), and intentional infliction of emotional distress (Count VIII). The following claims remain: Violation of the Free Exercise Clause of the First Amendment (Count I), First Amendment Retaliation (Count II), Violation of the Equal Protection Clause of the Fourteenth Amendment (Count IV), Negligence (Count VI), and Gross Negligence (Count VII).

Defendants State of Indiana, Governor of Indiana, Lieutenant Governor of Indiana Micah Beckwith, Unites States Department of Veterans Affairs, Indianapolis VA Medical Center (HUD-VASH/TIP Program), Hoosier Homes Property Management, Redwood Capital Investments Midwest LLC, Carrie Kinder, Omar [Last name unknown], and John Does 1–5 are **DISMISSED** from this action. The **Clerk** is **DIRECTED** to remove these parties from the case caption.

**IT IS SO ORDERED** this 26th day of June 2026.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distribute by U.S. Mail to:

KURT KALANI SPARKS
128 North Colorado Avenue
Indianapolis, IN 46201